

| | |
|---|---|
| Empleado | 02514 SIERRA AVELLA CLAUDIA ESTHER |
| Dirección | - BOGOTA COLOMBIA |
| | BOGOTA COLOMBIA |
| Nacionalidad | CO    Nº pasaporte |
| Agente | BONIL    Libreta de marino    BOGOTA |
| Puesto | ASSISTANT HOUSEKEEPING MANAGER |
| Buque | M/V COSTA FORTUNA |
| Aeropuerto de salida    BOGOTA | |

Salario Consolidado Mensual  EUR 1440
Mínimo Garantizado Mensual  EUR 1440

Fecha de embarque  10-05-2010
Aeropuerto de regreso    BOGOTA

## 1. APLICACIÓN

Este contrato de trabajo temporal de Empleado se celebra expresamente al inicio de la relación entre Costa Crociere S.p.A. (en adelante, el Armador) y el Empleado, no ciudadano ni residente en un Estado miembro de la Unión Europea y que ha embarcado en las secciones de puente y de máquinas a bordo de los barcos de Costa Crociere S.p.A., denominados con el nombre de "Costa" seguido de una segunda palabra que compone el nombre del barco en el registro internacional italiano con arreglo al Decreto Legislativo nº 457 de 30 de diciembre de 1997, convertido, tras sufrir enmiendas, en la Ley nº 30 de 27 de febrero de 1998. El presente contrato de trabajo siempre tendrá validez jurídica, independientemente del destino del barco.

El Empleado embarcará en la fecha especificada en el contrato y se trasladará, en cualquier momento y lugar, durante el período regido por el contrato, a cualquier barco operado por el Armador, quien asumirá los gastos del viaje.

El Empleado se compromete a prestar sus servicios al Armador de manera competente, y declara que posee y que hará uso de las capacidades acordes con la titulación que declare tener. Al objeto de facilitar las inspecciones nacionales e internacionales exigidas por la actual legislación, los Empleados entregarán al capitán o a la persona que éste designe los siguientes documentos necesarios a efectos del embarque: a) pasaporte y libreta de marino; b) certificación y documentación conformes con el Convenio STCW de 1978, con las enmiendas de 1995; c) certificados médicos de aptitud física; d) los documentos actualmente necesarios para el embarque en los barcos que figuran en el registro internacional italiano.

Se sobreentiende que los Empleados podrán recuperar cuando lo deseen los documentos laborales anteriormente mencionados. De acuerdo con lo dispuesto en estos casos por la actual legislación italiana o internacional, el Armador o su delegado entregarán dichos documentos al Empleado cuando éste así lo solicite por escrito.

## 2. SERVICIO EN PERÍODO DE PRUEBA

Las primeras 12 (doce) semanas de servicio durante el primer periodo de trabajo para el Armador se considerarán como un período de prueba. Durante este período, tanto el Empleado como el Armador podrán concluir la relación laboral antes de que finalice el contrato. En este caso, no se aplicará ninguna indemnización por la finalización prematura de la relación laboral.

Durante el período de prueba, ambas partes podrán resolver el contrato de embarque mediante una notificación con 14 (catorce) días de antelación. Deberán abonarse al Empleado las cantidades que se le deban hasta el día de desembarque, inclusive. En lugar de la notificación, el Armador tiene la opción de abonar una indemnización compensatoria, equivalente al salario de los días correspondientes a la notificación no enviada. Del mismo modo, el Armador podrá deducir la cantidad correspondiente del salario en caso de que el Empleado no envíe la notificación con suficiente antelación.

## 3. DURACIÓN DEL EMPLEO

Normalmente, el Empleado será contratado por un período de 8 (ocho) meses, que podrá ser ampliado o reducido en 1 (un) mes por el Armador por motivos operativos.

El Armador podrá establecer un período contractual inferior a 8 (ocho) meses, siempre que no sea inferior a 2 (dos) meses, en función de la temporada de cruceros del barco. En casos especiales, se permite el embarque de Empleados por períodos inferiores a 2 (dos) meses debido a exigencias operativas específicas relacionadas con el solapamiento de responsabilidades laborales, el tipo de huéspedes a bordo, etc.

Los Empleados podrán solicitar una ampliación del período de embarque hasta 3 (tres) meses, siempre que dicha solicitud se presente con al menos 60 (sesenta) días de antelación respecto a la fecha de finalización del contrato. La concesión de dicha ampliación por parte del Armador no repercutirá en modo alguno en el puesto actual del Empleado ni en sus condiciones económicas.

El empleo finalizará automáticamente, con arreglo al presente Acuerdo, a la llegada del barco al puerto indicado por el Armador una vez concluido el período de embarque o cualquier otro período especificado en el contrato de trabajo de los Empleados.

## 4. JORNADA LABORAL

La jornada laboral normal será de 8 (ocho) horas diarias para todos los Empleados de lunes a viernes y de 4 (cuatro) horas los sábados, lo que suma un total de 44 (cuarenta y cuatro) horas semanales y 191 (ciento noventa y una) horas mensuales.

Costa Crociere S.p.A.
Sede Legale e Uffici:
Via XII Ottobre, 2 - 16121 Genova
Tel. +39 010 5483 1
Fax +39 010 5483 290
www.costa.it

P.I./C.F.   02545900108
Cap. Soc. € 390.562.056,00
Reg. Imp. Ge nº 02545900108

Numero Verde 800-532853



## 5. HORAS EXTRAORDINARIAS

Cualquier hora de trabajo que sobrepase la jornada normal de 8 (ocho) horas diarias de lunes a viernes y de 4 (cuatro) horas los sábados se abonará al Empleado como hora extraordinaria. La remuneración de cada hora extraordinaria equivaldrá a 1,25 veces el nivel salarial básico por hora. Todo Empleado tendrá derecho al pago de las horas extraordinarias mensuales garantizadas. Las funciones que el Empleado deba desempeñar, de acuerdo con las leyes internacionales y del Estado del pabellón, no pueden reducir las horas mínimas de descanso. Esta remuneración está pensada para compensar cualquier dedicación adicional que se realice durante el período de embarque. Sin embargo, el Armador podrá organizar los cuadrantes de trabajo mensuales basándose en una solicitud de 90 (noventa) horas de trabajo extraordinarias al mes.

## 6. PERÍODOS DE DESCANSO

Cada Empleado descansará un mínimo de 11 (once) horas por cada 24 (veinticuatro) horas trabajadas y 77 (setenta y siete) horas por cada período de siete días.

Las horas de descanso no podrán distribuirse en más de tres períodos, de los cuales uno será de al menos 6 (seis) horas de duración, y el intervalo entre períodos consecutivos de descanso no podrá ser superior a 13 (trece) horas. Los descansos breves de menos de 30 (treinta) minutos no se considerarán como un período de descanso.

## 7. VACACIONES PAGADAS

El Empleado tendrá derecho al pago de: a) 3 (tres) días naturales por mes trabajado o el prorrateo correspondiente para períodos inferiores; b) vacaciones pagadas adicionales en lugar de la remuneración por 4 (cuatro) horas trabajadas en sábado y 8 (ocho) horas en domingo / 52 (cincuenta y dos) horas al mes o el prorrateo correspondiente a un período inferior; c) un día de vacaciones pagadas (basadas únicamente en el salario base) por cada mes trabajado —o el prorrateo correspondiente a un período inferior— como compensación por el trabajo en días festivos.

En caso de que el Empleado solicite desembarcar o sea desembarcado por motivos disciplinarios antes de haber concluido la relación laboral, el Armador podrá retener los importes que resulten necesarios para cubrir los gastos de repatriación del Empleado sobre el importe total acumulado de vacaciones pagadas y de vacaciones suplementarias. El Armador podrá presentar documentos justificativos de los gastos incurridos.

## 8. SALARIO Y PRESTACIONES SOCIALES

El salario mensual consolidado incluye el salario base (8 horas diarias, 44 horas semanales, 191 horas mensuales), las horas extraordinarias garantizadas al mes (de acuerdo con las horas de descanso mínimas con arreglo al MLC 2006 - 11 horas diarias de descanso y 77 horas de descanso por 7 días trabajados), vacaciones suplementarias por días semanales de descanso (52 horas al mes), prestaciones sociales y bonificaciones, vacaciones pagadas (3 días al mes), vacaciones pagadas por días festivos (un día por mes), anticipo por gastos administrativos por mes (pagos anticipados compensatorios de los gastos de visados, certificado de la OMI, documentos justificativos del Convenio STCW, examen médico de contratación y vacunación). El salario no incluye bonificaciones por servicios especiales, tales como restaurantes no concertados, espectáculos, transporte de equipaje y de mercancías, servicio de gobierno, llamadas nocturnas, etc. Las bonificaciones de estos servicios especiales se abonarán por separado. El salario del Empleado que firma su primer contrato será un 10% inferior al salario base.

El Empleado recibirá su salario en EUROS, a más tardar el día doce del mes siguiente.

A efectos de cálculo de los salarios, se entenderá que un mes natural tiene 30 (treinta) días.

El Empleado recibirá al final de su trabajo el importe total acumulado de vacaciones suplementarias por días de descanso semanales y vacaciones pagadas. El Empleado no recibirá en su salario mensual consolidado el importe del anticipo por gastos administrativos en caso de que solicite directamente al Armador el pago de dichas gastos.

De conformidad con las cláusulas 2 y 3 del artículo 3 de la Ley italiana nº 30/98, los interlocutores sociales acuerdan que para los Empleados que no sean ni ciudadanos ni residentes de un Estado miembro de la Unión Europea, se aplicará la legislación en materia de seguridad social vigente en los respectivos países de residencia. Por ello, los Empleados afectados tienen derecho a una bonificación mensual por prestaciones sociales. Dicha bonificación correspondiente al pago íntegro o parcial de la cotización a la seguridad social y al régimen de pensiones. El Empleado estará obligado a depositar dicha bonificación en su fondo de pensiones nacional o privado y el Armador no será responsable en caso de que el Empleado no realice el pago en su país de residencia. El Empleado no recibirá la bonificación mencionada en su salario mensual consolidado en caso de que resida en un país que exija directamente al Armador el pago de prestaciones sociales o si reside en un país que mantiene un acuerdo recíproco al respecto con el Estado de bandera italiana.

## 9. ANTICIPOS DE SALARIO

El Empleado podrá solicitar un adelanto en efectivo a cuenta de su salario una vez al mes, que se abonará entre los días 15 y 20 de cada mes, siempre que éste no supere el 60% del salario base mensual.

## 10. RESOLUCIÓN DE LA RELACIÓN LABORAL

La relación laboral se resolverá: a) a la finalización del período de servicio convenido; b) en caso de baja a causa de enfermedad o lesión, tras haber realizado un examen médico de acuerdo con el convenio colectivo.

El Armador podrá resolver el contrato de trabajo del Empleado: c) enviando al Empleado una notificación por escrita con 14 (catorce) días de antelación, por cualquier causa; d) en caso de incompetencia o conducta incorrecta del Empleado; e) en caso de pérdida total del barco, o si éste permanece inactivo durante un período continuo de al menos un mes, o en caso de venta del barco.

El Empleado al que se aplica el presente Acuerdo podrá resolver la relación laboral: f) enviando al representante del Armador a bordo una notificación por escrito con 14 (catorce) días de antelación; g) si, en el transcurso del viaje, se confirma que el cónyuge, el padre, la madre o los hijos han caído gravemente enfermos; h) si el barco ha sido arrestado o ha permanecido detenido durante 30 (treinta) días; i) si, tras efectuar un procedimiento conciliatorio, el Armador no cumple las condiciones del presente Acuerdo.

El Empleado recibirá una indemnización equivalente a dos meses del salario base una vez resuelta la relación laboral de acuerdo con las cláusulas (c) y (e). Estas cláusulas no se aplicarán al servicio en período de prueba.

No se considerará causa de terminación el hecho de que, durante el período del acuerdo, el Armador traslade al Empleado a otro barco perteneciente o relacionado con el mismo Armador, con el mismo rango, salario y demás condiciones, siempre que en este segundo barco sea contratado con condiciones de viaje idénticas o similares. El traslado no supondrá ninguna pérdida de ingresos ni de derechos y el Armador correrá con todos los gastos y la manutención del traslado.

Costa Crociere S.p.A.
Sede Legale e Uffici:
Via XII Ottobre, 2 - 16121 Genova
Tel. +39 010 5483 1
Fax +39 010 5483 290
www.costa.it

P.I./C.F.   02545900108
Cap. Soc. € 390.562.056,00
Reg. Imp. Ge n° 02545900108

Numero Verde 800-532853


## 11. REPATRIACIÓN DEL EMPLEADO

La repatriación deberá realizarse teniendo en cuenta las necesidades y los requisitos razonables para el confort del Empleado. La repatriación se realizará en un vuelo programado al aeropuerto del país del Empleado más cercano a su lugar de residencia.

Durante la repatriación por motivos normales, el Armador correrá con los siguientes costes hasta que los Empleados alcancen el destino de repatriación final acordado, que puede ser tanto el lugar de contratación original como su domicilio: a) los gastos de alojamiento y alimentación; b) unos gastos razonables de manutención y viaje; c) el transporte de equipaje personal del Empleado hasta el peso máximo permitido por cada compañía aérea, salvo si el Empleado solicita desembarcar o es objeto de un desembarque por motivos disciplinarios antes de concluir la relación laboral. En estos casos, el Armador podrá retener los importes adicionales que resulten necesarios para cubrir los gastos de repatriación del Empleado sobre el importe total acumulado de vacaciones suplementarias por días semanales de descanso y vacaciones pagadas.

## 12. NORMAS GENERALES Y REGLAMENTOS

El Empleado cumplirá todas las normas y reglamentos establecidos por el Armador y el capitán del barco, así como toda la legislación aplicable. El Empleado obedecerá las órdenes y desempeñará las funciones que le asigne el capitán del barco, los oficiales y el supervisor del departamento del Empleado. Asimismo, se comportará de manera respetuosa con todo el personal del barco. El Empleado no podrá presentar estado de embriaguez, hacer apuestas, utilizar o poseer armas de fuego, cuchillos u otras armas, ni consumir drogas ilegales o narcóticos. El Empleado fumará únicamente en las zonas habilitadas para ello, será educado y amable con los huéspedes, no utilizará las instalaciones de los huéspedes y no confraternizará ni mantendrá relaciones sexuales con los huéspedes. El Armador no será responsable de la pérdida o daño de los efectos personales del Empleado.

El Armador se asegurará de que se aplique a bordo un procedimiento justo, efectivo y rápido para tratar casos de incumplimiento de obligaciones laborales y reclamaciones o quejas formales del Empleado, y ofrecerá garantías contra posibles represalias por presentar quejas que no sean manifiestamente vejatorias o maliciosas, a bordo y en tierra. En el momento del embarque se entregarán al Empleado todas las normas, los procedimientos y el código ético; éste deberá firmar un acuse de recibo.

## 13. ASISTENCIA MÉDICA

El Empleado tendrá derecho a recibir asistencia médica inmediata, incluido el cuidado dental básico, cuando sea preciso.

El Empleado que se encuentre hospitalizado en el extranjero debido a una enfermedad o lesión tendrá derecho a recibir asistencia médica (incluida la hospitalización) por cuenta del Armador, durante el tiempo que sea preciso o hasta que el Empleado sea repatriado a su país de residencia, lo que se produzca en primer lugar.

El Empleado que sea repatriado a su país de residencia incapacitado para trabajar como resultado de una enfermedad o lesión tendrá derecho a recibir asistencia médica (incluida hospitalización) por cuenta del Armador: a) en caso de enfermedad, hasta 130 (ciento treinta) días después de la repatriación, a condición de que presente informes médicos justificativos; b) en caso de lesión, durante el tiempo que sea necesaria la asistencia médica o hasta que se emita un dictamen médico sobre la correspondiente incapacidad permanente.

El disfrute del derecho continuado a asistencia médica estará sujeto a la presentación de informes médicos justificativos, aprobados por el responsable médico del Armador.

## 14. PRESTACIÓN POR ENFERMEDAD

Si el Empleado desembarca en cualquier puerto debido a enfermedad o lesión, se seguirá realizando un pago prorrateado del salario base hasta que sea repatriado por cuenta del Armador. A partir de entonces, los Empleados tendrán derecho a una prestación por enfermedad a una casa equivalente a su salario base mientras permanezcan enfermos hasta un máximo de 130 (ciento treinta) días. Sin embargo, en caso de incapacidad debida a un accidente, se seguirá abonando el salario base hasta que el Empleado lesionado reciba el alta o se emita un dictamen médico relativo a una incapacidad permanente (de larga duración).

El disfrute del derecho continuado a prestación por enfermedad estará sujeto a la presentación de informes médicos justificativos que, cuando sea preciso, deberán ser aprobados por un médico reconocido por el Armador. Si otro médico, designado por el Empleado o que actúe en nombre de éste, no está de acuerdo con la evaluación, el Armador y el Empleado pueden designar conjuntamente un tercer médico, cuya decisión será final y tendrá carácter vinculante para ambas partes.

## 15. MATERNIDAD

En caso de que una mujer empleada se quede embarazada durante el período de empleo: a) la empleada informará de ello al capitán tan pronto como el embarazo esté confirmado; b) el Armador repatriará la empleada tan pronto como la sea razonablemente posible pero en ningún caso más tarde de la semana 26 de gestación y, en caso de que la naturaleza de las operaciones del buque pudiera, en tales circunstancias, resultar peligrosa, en el primer puerto de escala; c) la empleada tendrá derecho a recibir 2 (dos) meses de salario base; d) la empleada gozará de prioridad para ocupar una vacante en el mismo puesto o en un puesto equivalente en el año siguiente al nacimiento del hijo, siempre y cuando existan vacantes disponibles.

## 16. INCAPACIDAD

El Empleado que sufra una incapacidad permanente como consecuencia de un accidente sufrido mientras trabajaba para el Armador, independientemente de quien sea la culpa, incluidos accidentes ocurridos mientras viajaba hacia o desde el barco, y cuya capacidad para trabajar como Empleado se haya visto reducida como consecuencia de dicho accidente, excluyendo la incapacidad permanente debida a actos deliberados, tendrá derecho, aparte de la prestación por enfermedad, a una indemnización de acuerdo con las disposiciones del convenio colectivo.

## 17. FALLECIMIENTO EN ACTO DE SERVICIO

Si el Empleado fallece por la causa que fuere durante el período laboral con el Armador, incluido el fallecimiento por causas naturales y mientras viaja hacia o desde el buque, o como consecuencia de algún conflicto o similar, excluido el fallecimiento debido a actos deliberados, el Armador abonará la cantidad de 60 000 (sesenta mil) USD a un beneficiario designado, la cantidad de 15 000 (quince mil) USD a cada hijo dependiente hasta un máximo de 3 (tres) hijos menores de 18 años. El Armador también trasladará a sus expensas el cuerpo hasta el domicilio del Empleado si resulta factible y si así lo solicita la familia, y correrá con los gastos de entierro. Si el Empleado no ha designado a ningún beneficiario, la cantidad anteriormente mencionada se abonará a la persona o institución autorizada por la ley para administrar el patrimonio del Empleado. Todo pago efectuado en virtud del presente artículo se realizará sin perjuicio de cualquier reclamación de indemnización solicitada legalmente, aunque podrá deducirse del pago correspondiente.

Costa Crociere S.p.A.
Sede Legale e Uffici:
Via XII Ottobre, 2 - 16121 Genova
Tel. +39 010 5483 1
Fax +39 010 5483 290
www.costa.it

P.I./C.F.   02545900108
Cap. Soc. € 390.562.056,00
Reg. Imp. Ge nº 02545900108

Numero Verde 800-532853



Contrato nº: 2010.9906

**18. ALIMENTACIÓN, ALOJAMIENTO, ROPA DE CAMA, SERVICIOS, UNIFORMES, ETC.**
El Armador suministrará, como mínimo, alojamiento, instalaciones recreativas y alimentación y servicios de restauración de acuerdo con las leyes del Estado del pabellón y teniendo en cuenta las normas especificadas en el Título 3 del Convenio sobre el trabajo marítimo de la OIT de 2006.
El Armador creará una CAJA DE PREVISIÓN PARA LA TRIPULACIÓN, financiada directamente y por medio de las multas recaudadas entre los miembros de la tripulación como resultado de medidas disciplinarias; esta caja será administrada por el capitán de personal, el capellán y el director del crucero.
El Armador suministrará al Empleado los uniformes y correrá con los gastos de limpieza de los mismos. Cuando abandone el buque, el Empleado devolverá al Armador todos los uniformes en buen estado y le reembolsará cualquier uniforme que no sea devuelto o que se encuentre deteriorado más allá de su uso normal. Para los principales puestos de responsabilidad y Oficiales, el Armador suministrará al Empleado uniformes de los que éste último deberá abonar una tercera parte. Esta cantidad se podrá deducir del primer mes de salario del Empleado o bien abonarse en metálico a bordo.
El Armador correrá con el gasto de la limpieza de dichas uniformes.

**19. EQUIPO DE PROTECCIÓN PERSONAL**
El Armador suministrará el equipo de protección personal necesario de acuerdo con los reglamentos CGS/OMI, o cualquier reglamento que sea aplicable en el Estado del pabellón y que especifique cualquier equipo adicional, que cada Empleado debe utilizar durante su servicio a bordo.

_Ley de protección de datos._
De conformidad con el Decreto Legislativo italiano 196/2003, se notifica por la presente al Empleado que el Armador procesa y conserva datos personales para su tratamiento electrónico o manual. Los datos personales suministrados por los Empleados se utilizarán únicamente a efectos de selección, contratación y dotación de los Empleados del Armador y únicamente se comunicarán a terceros si resulta necesario a los efectos mencionados. En virtud del artículo 7 del Decreto Legislativo 196/2003, el Empleado podrá ejercer siempre que lo desee su derecho de acceso e información en relación con los datos registrados, enviando una solicitud a Costa Crociere (Departamento de RR.HH. - Privacidad) - Via XII Ottobre 2 - 16121 Génova.

Mediante la firma del presente documento, el Empleado declara haber leído y comprendido las condiciones del presente Acuerdo y el convenio colectivo asociado; confirma que no se han establecido promesas ni otros acuerdos verbales y se adhiere al plan de seguros para prestaciones sociales adicionales, autorizando una deducción mensual de 17 euros.

El Armador y el Empleado han celebrado el presente Acuerdo el día
El Armador:
Costa Crociere S.p.A.

Responsable de personal

El Empleado:

Costa Crociere S.p.A.
Sede Legale e Uffici:
Via XII Ottobre, 2 - 16121 Genova
Tel. +39 010 5483 1
Fax +39 010 5483 290
www.costa.it

P.I./C.F.   02545900108
Cap. Soc. € 390.562.056,00
Reg. Imp. Ge nº 02545900108

Numero Verde 800-532853



| | |
|---|---|
| Employee: 02514 SIERRA AVELLA CLAUDIA ESTHER | |
| Address: ██████████ – BOGOTA COLOMBIA | Consolidated Monthly Salary: 1,440 EUROS |
| BOGOTA COLOMBIA | Guaranteed Minimum Monthly Salary: 1,440 EUROS |
| Nationality: COLOMBIA    Passport No.: ██████ | |
| Agent: BONIL    Maritime identification book: ██████ BOGOTA | |
| Position: ASSISTANT HOUSEKEEPING MANAGER | |
| Ship: M/V COSTA FORTUNA | Embarkation Date: 05/10/2010 |
| Departure Airport: BOGOTA | Return Airport: BOGOTA |

## 1. APPLICATION

This temporary employee work contract is entered expressly at the beginning of the agreement between Costa Crociere S.p.A (from this point forward referred to as the Employer) and the Employee, who is neither a citizen or resident of a Member State of the European Union and who has embarked on the  bridge and machinery sections aboard Costa Crociere S.p.A. ships, referred to as "Costa" followed by a second word comprising the name of the ship in the Italian international register in compliance with Legislative Decree No. 457 of December 30, 1997, which after amendments was converted into Law No. 30 of February 27, 1998. This work contract will invariably be lawfully valid, regardless of the ship's destination.

The Employee will embark on the date specified on the work contract and will be transferred, at any moment and place during the time period defined in the work contract, to any ship operated by the Employer, which will assume the trip's expenses.

The Employee is committed to providing his/her services to the employer in a competent manner and affirms that he/she possesses and will make use of his/her skills according to his/her stated qualifications. For the purpose of facilitating national and international inspections mandated by current laws, the Employee will submit the following necessary documents to the captain or person designated by the captain at the time of embarkation: a) passport and maritime identification book; b) certification and documents compliant with the 1978 STCW Convention, with the amendments  from 1995; c) medical reports of physical fitness; d) documents currently required to embark ships in the Italian international register.

It is understood that the Employee may claim his/her aforementioned work documents at will. In compliance with the stipulations set forth for such cases by current Italian or international laws, the Employer or their representatives will submit said documents to the Employee upon his/her written request.

## 2. SERVICE DURING TRIAL PERIOD

The first 12 (twelve) weeks of service during the initial work period for the Employer will be considered a trial period, during which time either the Employee or the Employer may terminate the employment agreement prior to the contract's expiration. In such case, no severance payment will apply for the premature termination of the employment agreement.

During the trial period, both parties may terminate the work contract by way of a notice issued 14 (fourteen) days in advance. The Employee must be paid his/her earnings through and including the day of disembarkation. In place of a notice, the Employer may issue a severance payment equivalent to the salary pay for the neglected 14-day notice period. The Employer may also deduct the corresponding amount from his/her salary in case the Employee has failed to provide notice with sufficient time in advance.

## 3. DURATION OF EMPLOYMENT

Costa Crociere S.p.A
Legal Headquarters
Via XII Ottobre, 2-16121 Genova
Tel.: +39 010 5483 1
Fax: +39 010 5483 290
www.costa.it
P.I./C.F. [Tax Code/VAT No.] 02545900108
Capital: 390,562,056.00 Euros
Tax Registration No.: 02545900108
Toll-Free Number: 800-532853



Normally, the Employee will be hired for a period of 8 (eight) months, which the Employer may extend or reduce by 1 (one) month for operational reasons.

The Employer may set forth a contract period shorter than 8 (eight) months, but no shorter than 2 (two) months, during the ship's cruise season. In special cases, Employees are permitted to embark for periods shorter than 2 (two) months for specific operational needs related to overlapping work responsibilities, the type of guests on board, etc.

Employees may make a written request to extend their embarkation period for up to 3 (three) months, as long as the request is issued a minimum of 60 (sixty) days prior to the projected expiration date of the work contract. The granting of such an extension by the Employer will have no repercussions whatsoever on the Employee's assignments or financial conditions therein.

Employment will expire automatically, in accordance with this Agreement, on the date stipulated in the Employee's work contract upon the conclusion of the embarkation period or of any other period specified on the Employee's work contract.

## 4. WORK DAY

The regular work day will comprise 8 (eight) hours per day for all Employees from Monday through Friday and 4 (four) hours on Saturdays, for a total sum of 44 (forty-four) hours per week and 191 (one hundred and ninety-one) hours per month.

## 5. OVERTIME HOURS

The Employee will be compensated for any hour worked that exceeds the normal 8 (eight) hour work day from Monday to Friday and 4 (four) hours on Saturdays as overtime. The pay rate for each overtime hour will be equivalent to 1.25 times the basic hourly salary rate. All Employees shall have the right to receive payment for 150 (one hundred and fifty) guaranteed overtime hours per month. The tasks that the Employee must perform may not reduce the minimum required amount of hours of time off, in compliance with international laws and those of the ship's Flag State. This pay rate is intended to compensate for any additional tasks performed during the period of embarkation. However, the Employer may organize monthly work schedules based on requests for 90 (ninety) hours of overtime work per month.

## 6. TIME OFF

Every Employee will be off duty for a minimum duration of 11 (eleven) hours for every 24 (twenty-four) hours worked and for a duration of 77 (seventy-seven) hours for every seven-day period.

Time off may not be distributed among more than three periods, one of which must be of a minimum duration of 6 (six) hours, and the interval between consecutive periods of time off may not exceed 13 (thirteen) hours. Short breaks of less than 30 (thirty) minutes shall not be considered time off.

## 7. PAID LEAVE TIME

The Employee shall have the right to payment for: a) 3 (three) days of leave time per month of work, or the prorated accrual from shorter periods b) additional paid leave time instead of compensation for 4 (four) hours worked on Saturdays and 8 (eight) hours worked on Sundays/ 52 (fifty-two hours per month, or the prorated accrual from shorter periods; c) one paid day of leave (solely based on base salary) for each month worked – or the prorated earnings accrued from a shorter period – as compensation for working on holidays.

In the event that the Employee requests to disembark or is subject to disembarkation for disciplinary reasons before the end of the contract, the Employer may retain the additional earnings deemed necessary to cover the costs of the Employee's repatriation from his/her total earnings corresponding to his/her latest monthly salary, accumulated time off, and supplementary time off. The Employer shall present documentation justifying the incurred costs.

Costa Crociere S.p.A
Legal Headquarters
Via XII Ottobre, 2-16121 Genova
Tel.: +39 010 5483 1
Fax: +39 010 5483 290
www.costa.it
P.I./C.F. [Tax Code/VAT No.] 02545900108
Capital: 390,562,056.00 Euros
Tax Registration No.: 02545900108
Toll-Free Number: 800-532853



## 8. SALARY AND BENEFITS

The consolidated monthly salary includes the base salary (8 hours per day, 44 hours per week,191 hours per month), guaranteed overtime hours per month (in compliance with the minimum required time off in accordance with the MLC 2006, determined as 11 hours of time off daily and 77 (seventy-seven) hours of time off for any seven-day period), supplementary vacation time for leave time during the week (52 hours per month), benefits and bonuses, paid leave time (3 days per month), paid leave time for holiday (one day per month), advance pay for administrative expenses per month (advance compensatory pay for visa issuance expenses, OMI certification, approval documents from the STCW Agreement, medical examination prior to hiring and vaccination). The salary does not include bonuses for special services such as private dining, shows, transportation of baggage and merchandise, ship service, calls made at night, etc. Bonuses for these special services will be paid separately. The salary for first-time Employees will be 10% less that their base salary.

The Employee will receive his/her salary in EUROS, no later than the twelfth day of the following month.

For purposes of salary calculations, one calendar month is considered to contain 30 (thirty) days.

At the end of his/her employment agreement, the Employee will receive his/her total accumulated earnings in pay for work performed on Saturdays, Sundays and holidays, as well as his/her due leave time. The Employee's consolidated monthly salary will include a monthly advance for administrative expenses, which will cover the following: issuance of visas, OMI certification, approval documents from the STCW Agreement, medical examination prior to hiring and vaccination. The Employee will not receive earnings from the advance for administrative expenses if he/she resides in a country that requests that Employers cover said expenses directly.

In compliance with Clauses 2 and 3 of Article 3 of Italian Law No. 30/98, it is agreed by the interested parties that in cases where Employees are neither citizens nor residents of a Member State of the European Union, the social security law currently in force in their respective countries of residence will apply. Therefore, the affected Employees have the right to a monthly supplement for social benefits. Said supplement will correspond to the whole or partial payment of social security contributions and pension dues. The Employee is obligated to deposit said supplement into his national or private pension fund and the Employer will not be responsible for the Employee's failure to make the payment in his country of residence. The Employee will not receive the aforementioned supplement in his consolidated monthly salary if he/she resides in a country that requires the Employer to pay for social benefits directly, or if he/she resides in a country that holds a related bilateral agreement with the Italian Flag State.

## 9. SALARY ADVANCES

The Employee may request a cash advance from his salary once per month, which will be paid on the 15th and 20th days of each month, as long as it does not exceed 60% of his/her base monthly salary.

## 10. CONCLUSION OF THE WORK AGREEMENT

The work contract will expire: a) upon the conclusion of the agreed upon period of service; b) in case of absence from work due to illness or injury, after having undergone a medical examination in compliance with the collective agreement.

The Employer may terminate the Employee's work contract: c) for any reason, having previously notified the Employee in writing 14 (days) in advance, d) in case of incompetence or improper conduct by the Employee, e) in case of the complete loss of the ship, of its inactivity for a continuous period of at least one month, or in case of the ship's sale.

The Employee may terminate the work contract: f) by sending the Employer's representative aboard a written notification 14 (days) in advance, g) if, during the trip, the Employee's spouse, father, mother or child/children have fallen gravely ill; h) if the ship has been detained and has remained under detention for 30 (thirty) days; i) if, after a mediation process, the Employer fails to fulfill the conditions of this Agreement.

Costa Crociere S.p.A
Legal Headquarters
Via XII Ottobre, 2-16121 Genova
Tel.: +39 010 5483 1
Fax: +39 010 5483 290
www.costa.it
P.I./C.F. [Tax Code/VAT No.] 02545900108
Capital: 390,562,056.00 Euros
Tax Registration No.: 02545900108
Toll-Free Number: 800-532853



The Employee will receive a severance payment equivalent to two months of his/her base salary upon the termination of the work agreement in accordance with Clauses (c) and (e), (h) and (i) as stipulated above. These clauses will not apply to services during the probationary period.

The Employer's transfer of the Employee to another ship belonging to or affiliated with the same Ship Operator during the period covered by the Agreement, with the same position, salary, and other conditions, will not constitute grounds for his/her withdrawal, as long as this second ship is contracted under the same or similar travel conditions. No loss of earnings or rights will be considered a result of the transfer and the Employer will assume all associated costs and expenses.

## 11. THE EMPLOYEE'S REPATRIATION

The process of repatriation must bear in mind the reasonable needs and requirements for the Employee's comfort.

Repatriation will be carried out via a scheduled flight to the airport nearest to the Employee's "Place of repatriation".

During repatriation, for the purpose of terminating the contract, the Employer will assume the following expenses until the Employee's arrival at the agreed upon "place of repatriation", which may be the location at which the Employee's contract was entered into originally, or his/her domicile: a) lodging and food expenses; b) reasonable daily and travel expenses; c) transportation of the Employee's personal baggage within the maximum weight limits allowed by each airline, unless the Employee requests to disembark or is subject to disembarkation for disciplinary reasons before the end of the contract. In such cases, the Employer may retain the additional earnings deemed necessary to cover the costs of the Employee's repatriation from his/her total earnings corresponding to his/her latest monthly salary, overtime pay for work on Saturdays, Sundays and holidays, and monthly leave time.

## 12. GENERAL NORMS AND REGULATIONS

The Employee will abide by all norms and regulations set forth by the Employer and the ship's captain as well as all applicable law. The Employee will obey orders and will perform the tasks assigned to him/her by the ship's captain, by officers and by the supervisor of his/her Employees' quarters. The Employee will also behave in a respectful manner toward all ship personnel. The Employee may not display any level of intoxication, gamble, use or possess firearms, knives or other weapons, or consume illegal drugs or narcotics. The Employee may only smoke in designated smoking areas, must be polite and well-mannered toward guests, may not make use of guests' quarters and may not socialize or have sexual relations with guests. The Employer shall not be held responsible for loss or damages to the Employee's personal effects.

The Employer will ensure a fair, effective and timely process on board to deal with cases of negligence of work duties and formal claims or complaints from the Employee, and will offer protections both on board and on land against possible reprisals for issuing complaints that are not manifestly deemed humiliating or malicious in nature. The Employee will be issued all norms, procedures and the code of ethics upon embarkation, for which the Employee must sign an acknowledgement of receipt.

## 13. MEDICAL ASSISTANCE

The Employee shall have the right to receive immediate medical assistance, including basic dental care, when deemed necessary.

If the Employee is hospitalized abroad due to illness or injury, he/she shall have the right to receive medical coverage and assistance (including hospitalization) at the Employer's expense for as long as is deemed necessary or until the Employee is repatriated to his/her country of residence, whichever comes first.

If the Employee is repatriated to his/her country of residence unable to work as a result of illness or injury, he/she shall have the right to receive medical assistance (including hospitalization) at the Employer's expense: a) in case of illness, for up to 130 (one hundred and thirty) days after repatriation, as long as validating medical reports are submitted; b) in case of injury, for as long as medical assistance is deemed necessary or until a medical report on the corresponding permanent disability is issued.

Costa Crociere S.p.A
Legal Headquarters
Via XII Ottobre, 2-16121 Genova
Tel.: +39 010 5483 1
Fax: +39 010 5483 290
www.costa.it
P.I./C.F. [Tax Code/VAT No.] 02545900108
Capital: 390,562,056.00 Euros
Tax Registration No.: 02545900108
Toll-Free Number: 800-532853



The continued right to medical assistance will be subject to the submission of validating medical reports approved by the Employer's chief medical officer.

## 14. COMPENSATION FOR ILLNESS

If the Employee disembarks at any port due to illness or injury, he/she will continue to receive his/her prorated base salary pay until his/her repatriation at the Employer's expense. From then on, the Employee shall have the right to be compensated for his/her illness at a rate equivalent to his/her base salary during his/her illness for up to 130 (one hundred and thirty) days. However, in case of a disability as a result of an accident, he/she will continue to collect his/her base salary until the injured Employee is released from medical care or a medical report related to his/her (long-term) permanent disability is issued.

The continued right to medical assistance will be subject to the submission of validating medical reports that, when deemed necessary, must be approved by a medical doctor approved by the Employer. If another medical doctor designated by the Employee or acting on his/her behalf disapproves of the evaluation, the Employer and the Employee may jointly designate a third-party medical doctor, whose decision will be final and to which both parties will be bound.

## 15. MATERNITY

If a female Employee becomes pregnant during the period of employment: a) the Employee will make it known to the captain as soon as the pregnancy has been confirmed; b) the Employer will repatriate the Employee as soon as is reasonably possible but never later than on the 26th week of the pregnancy and; if the nature of the ship's operations may, under certain circumstances, prove dangerous, at the next port stop; c) the Employee shall have the right to receive 2 (two) months of base salary pay; d) the Employee will receive priority to occupy a vacancy in the same position or in an equivalent position the year following the birth of her child, providing that vacancies are available.

## 16. DISABILITY

Any Employee who suffers a permanent disability as a result of an accident occurred while working for the Employer, regardless of the party responsible for the accident, including accidents occurred during travel to or from the ship, and whose ability to work as an Employee has been constrained as a result of said accident, excluding permanent disability as a result of the Employee's deliberate actions, will have the right to compensation for his/her illness as well as to compensation in accordance with the conditions of the collective agreement.

## 17. DEATH WHILE IN THE LINE OF DUTY

If the Employee passes away for any reason during the employment agreement with the Employer, including death from natural causes and while traveling to or from the ship, or as a result of any seafaring or similar hazard, excluding death from the Employee's deliberate actions, the Employer will pay an amount of USD 60,000 (sixty thousand) to a designated beneficiary, and an amount of USD 15,000 (fifteen thousand) to each of up to 3 (three) dependent children under the age of 18. The Employer will also transport the body to the Employee's domicile at its expense if it is feasible and if the family so requests, and will assume the costs of burial. If the Employee has not designated any beneficiary, the aforementioned amount will be paid to the person or institution authorized by law to manage the Employee's assets. All payments made in accordance with this Article will be made notwithstanding any legally sought compensatory claims, though they may be deducted from such a payment.

## 18. FOOD, LODGING, BED LINENS, SERVICES, UNIFORMS, ETC.

The Employer shall provide, at the very least, lodging, recreational facilities, and rehabilitation services in compliance with the laws of the Flag State and in consideration of the norms detailed in Title 3 of the OIT's 2006 Agreement on maritime labor.

Costa Crociere S.p.A
Legal Headquarters
Via XII Ottobre, 2-16121 Genova
Tel.: +39 010 5483 1
Fax: +39 010 5483 290
www.costa.it
P.I./C.F. [Tax Code/VAT No.] 02545900108
Capital: 390,562,056.00 Euros
Tax Registration No.: 02545900108
Toll-Free Number: 800-532853



The Employer will create an EMERGENCY FUND FOR THE CREW, funded directly and by means of the fines collected from Employees as a result of disciplinary measures; this fund will be managed by the captain of personnel, the chaplain, the cruise director and the union representative.

The Employer will provide the Employee with uniforms and will assume the costs of cleaning them. Upon his/her departure from the ship, the Employee will return all uniforms to the Employer in good condition and will reimburse it for any uniform that is not returned or is rendered unusable due to damage. The Employer will provide Employees in positions of foremost responsibility with uniforms for which they must pay one third of the cost. This amount will be deducted from the first month of the Employee's salary or paid for in cash aboard. The Employer will assume the costs of cleaning said uniforms.

## 19. PROTECTIVE EQUIPMENT FOR PERSONNEL

The Employer will provide the necessary protective equipment in compliance with CGS/OMI regulations, or with any regulations applicable in the Flag State along with any additionally specified equipment that the Employee must use during his/her service on board.

Information Confidentiality Law

In compliance with Italian Legislative Decree 196/2003, the Employee is hereby notified that the Employer records and maintains personal information for electronic or manual processing. Personal data provided by Employees will be used only for purposes of selecting, hiring and assigning Employees for the Employer and will only be disclosed to third parties if deemed necessary for the purposes mentioned. In accordance with Article 7 of Legislative Decree 196/2003, the Employee may always exercise his right to access and be informed of his personal data on record at his/her will by sending a request to Costa Crociere (Human Resources Department - Privacy) – Via XII Ottobre 2 - 16121 Genoa.

By signing this document, the Employee affirms having read and understood the conditions of this Agreement and the associated Collective Agreement and asserts that no promises or other verbal agreements have been entered. The Employee also agrees to the insurance plan for additional coverage, and hereby authorizes a monthly deduction in the amount of 17 euros.


The Employer and the Employee have entered this Agreement on
**Employer:**
Costa Crociere S.p.A.



___[signature]_____                    ___[signature]_____
Head of Personnel                                    Employee




Costa Crociere S.p.A
Legal Headquarters
Via XII Ottobre, 2-16121 Genova
Tel.: +39 010 5483 1
Fax: +39 010 5483 290
www.costa.it
P.I./C.F. [Tax Code/VAT No.] 02545900108
Capital: 390,562,056.00 Euros
Tax Registration No.: 02545900108
Toll-Free Number: 800-532853